IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

SHOE SHOW, INC.,                )
                                )
            Plaintiff,           )
      v.                         )     1:14CV434
                                )
ONE-GATEWAY ASSOCIATES, LLC,    )
                                )
            Defendant.           )

MEMORANDUM OPINION AND ORDER

BEATY, District Judge.

This matter is before the Court on a Motion to Dismiss [Doc. #10] the Plaintiff's Complaint filed by Defendant One-Gateway Associates, LLC ("Defendant"), pursuant to Rule 12(b)(1) and Rule 12(b)(2) of the Federal Rules of Civil Procedure. Plaintiff Shoe Show, Inc. ("Plaintiff") filed an Amended Complaint [Doc. #12] and Response [Doc. #13] to the Motion to Dismiss. In response to Plaintiff's Amended Complaint, Defendant filed a second Motion to Dismiss [Doc. #14] Plaintiff's Amended Complaint pursuant to Rule 12(b)(2). Plaintiff filed a timely Response [Doc. #17], and Defendant filed a timely Reply [Doc. #19]. For the reasons discussed herein, the Court will deny Defendant's Motion to Dismiss Plaintiff's Original Complaint as moot, and deny Defendant's Motion to Dismiss Plaintiff's Amended Complaint.

I.    FACTUAL AND PROCEDURAL BACKGROUND

On May 28, 2014, Plaintiff filed its Original Complaint in this action seeking a declaratory judgment that it is entitled to pay alternative rent to Defendant, Plaintiff's landlord, based on the lease agreement between the parities. Plaintiff and Defendant entered into the lease agreement in August 1999, for certain retail space in the Wal-Mart Super Center plaza in Summersville,

West Virginia. Defendant executed the lease agreement in West Virginia. Then Defendant mailed the lease agreement to Plaintiff in North Carolina, where Plaintiff accepted and executed it. The lease agreement was to last for a five year period, with the option for three additional five year extensions. Plaintiff, a North Carolina corporation with its principal place of business in Concord, North Carolina, operates a retail store in the space selling shoes and related accessories. Defendant is a West Virginia limited liability company with its principal place of business in Lewisburg, West Virginia. Defendant's sole purpose and business is to manage two shopping centers, which are both located in West Virginia, including the retail space leased to Plaintiff.

The lease agreement at issue contains a Major Tenant Vacating Clause (hereinafter "co-tenancy clause"), which Plaintiff argued entitles it to pay alternative rent due to certain events. Specifically, the co-tenancy clause provides, that "[i]n the event either Wal-Mart or Cato shall cease the conduct of business in the Shopping Center, and is not replaced within thirty (30) days of closing for business by another similar major tenant occupying at least ninety percent (90%) of the leased premises, then Tenant shall have the right to pay twenty (20) days in arrears, monthly, four percent (4%) of Gross Sales in lieu of Minimum Annual Rent and all other [charges pursuant to this] Lease." (Lease Agreement, [Doc. #1-1], at § 14.2.) Plaintiff asserted that because the tenant occupying the former Cato retail space, Factory Connection, closed and was not replaced within 30 days from the date of its closing, Plaintiff is entitled to pay the alternative rent pursuant to the co-tenancy clause. The parties have a similar case pending in this district based on the same co-tenancy clause, concerning a different time period and different

2

tenants. (See Case No. 1:10CV13.)

In response to Plaintiff's Original Complaint, Defendant filed a Motion to Dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction. As to its subject matter jurisdiction argument, Defendant asserted that Plaintiff's claims failed to exceed the $75,000 jurisdictional threshold required for this action based on diversity jurisdiction. Plaintiff then filed an Amended Complaint, which contained additional allegations concerning the value of its claims. Specifically, Plaintiff asserted that Defendant informed Plaintiff that Plaintiff is not entitled to exercise the co-tenancy clause to pay alternative rent, and that by doing so, Plaintiff is in default under the lease. Plaintiff stated that by putting Plaintiff on notice of default, Defendant has placed Plaintiff at risk of losing all rights and benefits that it is entitled to under the lease, including the right to occupy the retail space and to continue to earn profits from the operation of the store. Plaintiff asserts that facing these possible damages would be far in excess of the required jurisdictional amount of $75,000.

In response to the Amended Complaint, Defendant filed its Motion to Dismiss Plaintiff's Amended Complaint. In its Motion to Dismiss Plaintiff's Amended Complaint, Defendant moves to dismiss Plaintiff's claims based solely on Rule 12(b)(2) for lack of personal jurisdiction. Specifically, Defendant argues that it never purposely availed itself to jurisdiction in North Carolina. Defendant does, however, recognize that in the related case pending in this district, it was found that Defendant was subject to personal jurisdiction in North Carolina. Nonetheless, Defendant continues to oppose that finding in this action. In response to

Defendant's Motion to Dismiss the Amended Complaint, Plaintiff argues that for all the reasons stated in its Response to Defendant's Motion to Dismiss for lack of personal jurisdiction in Case No. 1:10CV13, Defendant is subject to personal jurisdiction in North Carolina.

II. DISCUSSION

Initially, the Court notes that after Defendant filed its first Motion to Dismiss, Plaintiff filed an Amended Complaint. As such, Defendant's Motion to Dismiss Plaintiff's Original Complaint will be denied as moot because the Original Complaint is "superseded" by Plaintiff's Amended Complaint. Hill v. Spartanburg Reg'l Health Servs. Dist., Inc., No. 7:13-271-MGL, 2013 WL 2395186, at *3 (D.S.C. May 31, 2013) ("Accordingly, the defendant's motion to dismiss . . ., which is directed at the original complaint, should be denied as moot because the original complaint was superseded by the plaintiff's amended complaint."); see also 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476, 636-37 (3d ed. 2010) (once an amended pleading is filed, "the original pleading no longer performs any function in the case.").

Defendant's present Motion to Dismiss Plaintiff's Amended Complaint is based solely on Rule 12(b)(2), in which it argues that the Defendant is not subject to personal jurisdiction in North Carolina. Accordingly, because Defendant no longer raises the argument that the Court lacks subject matter jurisdiction, it appears that Defendant concedes that the additional allegations contained in Plaintiff's Amended Complaint establish that Plaintiff's claims exceed the required jurisdictional amount of $75,000. Thus, the Court need only address Defendant's argument concerning personal jurisdiction as it relates to Plaintiff's Amended Complaint.

As to personal jurisdiction, federal courts may assert "personal jurisdiction over a defendant in the manner provided by state law." Carefirst of Md., Inc. v. Carefirst Pregnancy

4

Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003) (construing Fed. R. Civ. P. 4(k)(1)(A)). The plaintiff has the burden of making a prima facie showing of personal jurisdiction. Id. To exercise personal jurisdiction over a nonresident defendant, "the exercise of jurisdiction must be authorized under the state's long-arm statute" and "the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment." Id. Thus, the personal jurisdiction analysis is usually a two-step process.

North Carolina's long-arm statute, however, provides for personal jurisdiction in "any action, whether the claim arises within or without this State, in which a claim is asserted against a party who when service of process is made upon such party . . . is engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise." N.C. Gen. Stat. § 1-75.4(1)(d). This statute has been interpreted as extending a court's personal jurisdictional powers to the full extent permissible under federal due process See Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); Dillon v. Numismatic Funding Corp., 231 S.E.2d 629, 630 (1977) ("By the enactment of G.S. 1-75.4(1)(d), it is apparent that the General Assembly intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process."). Accordingly, the normal two-step inquiry merges into a single step. DP Envtl. Serv., Inc. v. Bertlesen, 834 F. Supp. 162, 164 (M.D.N.C. 1993). To satisfy federal due process, the defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945) (citation omitted).

Personal jurisdiction over a defendant may be either "general" relating to any course of action or "specific" and related to the particular course of action. See ALS Scan, Inc. v. Digital Serv. Consultants, Inc., 293 F.3d 707, 711-12 (4th Cir. 2002). In this action, the parties recognize that the proper analysis of personal jurisdiction in this action is that associated with specific jurisdiction. (See Response to Motion to Dismiss, [Doc. #17-1], at 6.) Specific jurisdiction can be found "[w]hen a controversy is related to or 'arises out of' a defendant's contacts with the forum . . . ." Helicopteros Nacionales de Colombia, S. A. v. Hall, 466 U.S. 408, 414, 104 S. Ct. 1868, 1872, 80 L. Ed. 2d 404 (1984) (quoting Shaffer v. Heitner, 433 U.S. 186, 204, 97 S. Ct. 2569, 2579, 53 L. Ed. 2d 683 (1977)). In such a case, "the Court has said that a 'relationship among the defendant, the forum, and the litigation' is the essential foundation of in personam jurisdiction." Id. (quoting Shaffer, 433 U.S. at 204, 97 S. Ct. at 2579). Generally, in deciding whether specific jurisdiction exists, a court will consider "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." Carefirst, 334 F.3d at 397 (citations and internal quotations omitted).

As to the first prong regarding the minimum contacts needed for purposeful availment in the context of contractual disputes, the Supreme Court has stated "that parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 105 S. Ct. 21741, 2182, 85 L.

6

Ed. 2d 528 (1985). Such contact provides fair warning of the possibility that a defendant may be subject to suit in the other state based on its purposefully directed activities at residents of the forum state. Id. Whereas, contacts that are "random," "fortuitous," or "attenuated" do not establish jurisdiction. Id. at 475.

Specific contacts that the courts have looked to in the business context include, but are not limited to:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

Consulting Engineers Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009) (internal citations omitted).

After considering Defendant's contacts with North Carolina concerning the lease agreement at issue, the Court concludes that Defendant has the minimum contacts necessary to find that Defendant has purposefully availed itself to the privilege of conducting business in North Carolina. Defendant and Plaintiff entered into a lease agreement for a five year period, which had the potential to be renewed three times. Thus, the parties' contemplated a possible 20 year relationship when entering into the lease agreement. Defendant knew that Plaintiff was

7

a North Carolina corporation upon entering into such relationship, and nonetheless, chose to enter into this long-term relationship. In the long-term lease agreement, Defendant was to mail all notices concerning the lease agreement to Plaintiff's headquarters, located in North Carolina, and Plaintiff was to keep and prepare its books and records at its North Carolina headquarters for Defendant's inspection. Additionally, Plaintiff was obligated to pay the rent required under the lease, and as Plaintiff was a North Carolina corporation, such rent was mailed from North Carolina to Defendant in West Virginia.

Furthermore, a contract without a choice-of-law provision is governed by the law of the state where the contract is made. Walden v. Vaughn, 579 S.E. 2d 475, 510 (N.C. Ct. App. 2003) (citing Bundy v. Commercial Credit Co., 157 S.E. 860, 863 (1931)). "A contract is made 'in the place where the last act necessary to make it binding occurred.'" Century Data Sys., Inc. v. McDonald, 428 S.E. 2d 190, 193-94 (N.C. Ct. App. 1993) (citations omitted). In this instance, Defendant executed the agreement in West Virginia, then sent the agreement to Plaintiff. Plaintiff then executed the contract in North Carolina. The last act necessary to make the lease agreement binding was the Plaintiff's execution of the agreement in North Carolina. See Parson v. Oasis Legal Finance, LLC, 715 S.E. 2d 240, 244 (N.C. Ct. App. 2011) (finding that the last signature on the contract constituted the location where the contract was formed). Accordingly, North Carolina law applies to the dispute concerning the lease agreement. For this reason, and for the other reasons described above, the Court finds that Defendant possesses the minimum contacts that are required to be found to have purposefully availed itself to the privilege of conducting business in North Carolina.

The second prong for addressing specific personal jurisdiction—whether the claims at issue arise out of the activities directed at the forum state—"requires that the defendant's contacts with the forum state form the basis of the suit." Consulting Engineers, 561 F.3d at 278-79. In this instance, Plaintiff is seeking a declaratory judgment that it is entitled to pay alternative rent to Defendant based on the lease agreement between the parities. The lease agreement was entered into in North Carolina, and the payments at issue originate in North Carolina. Additionally, the records and books that may potentially establish the rent owed to Defendant are located in North Carolina, which is the location at which the parties' agreed they be kept. Accordingly, the Court finds that Defendant's contacts with North Carolina do form the basis the of this suit, so as to satisfy the second prong of the specific jurisdiction analysis.

As to the third and last prong, concerning whether the exercise of jurisdiction is constitutionally reasonable, a court is directed to "to consider additional factors to ensure the appropriateness of the forum." Id. at 279. These factors include: "(1) the burden on the defendant of litigating in the forum; (2) the interest of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the shared interest of the states in obtaining efficient resolution of disputes; and (5) the interests of the states in furthering substantive social policies." Id. (citing Burger King, 471 U.S. at 477). Defendant has not shown that it would be greatly burdened by litigation in North Carolina. Instead, it appears that other than the lease agreement, the documents at issue in this case, which are the Plaintiff's records and books, are located in North Carolina. It would also follow, that the person responsible for such record keeping is also located in North Carolina. Additionally, North Carolina has a manifest interest in providing an effective means of redress for its resident

9

corporations when they are subject to a breach of contract.  See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223, 78 S. Ct. 199, 201, 2 L. Ed. 2d 223 (1957) (finding that the forum state had a manifest interest in providing means of redress for its residents when those residents' insurers refused to pay claims).  Finally, there are no substantive social policies impacted by having this litigation remain in North Carolina.  Thus, the Court finds that the exercise of personal jurisdiction is constitutionally reasonable.

III.   CONCLUSION

In sum, the Court denies Defendant's Motion to Dismiss [Doc. #10] Plaintiff's Original Complaint as moot because Plaintiff's Original Complaint was superceded by Plaintiff's Amended Complaint.  Furthermore, Defendant's Motion to Dismiss [Doc. #14] Plaintiff's Amended Complaint is denied because based on the above analysis of the prongs to be considered in assessing specific personal jurisdiction, the Court finds that Defendant is, in fact, subject to personal jurisdiction in North Carolina.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. #10] Plaintiff's Original Complaint pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(2) for lack of personal jurisdiction is hereby DENIED AS MOOT.  IT IS FURTHER ORDERED that Defendant's Motion to Dismiss [Doc. #14] Plaintiff's Amended Complaint pursuant solely to Rule 12(b)(2) for lack of personal jurisdiction is hereby DENIED.

This the 12th day of March, 2015.

_____
United States District Judge